# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) 2:19-cr-349 |
| JOSE RAMON CASTRO VALDEZ, | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Defendant Jose Ramon Castro Valdez was sentenced to a term of imprisonment of 100 months after he pled guilty via plea agreement to charges of conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, 400 grams or more of fentanyl, and a detectable amount of tramadol. ECF 174. He now moves *pro se*[1] to vacate that sentence pursuant to 28 U.S.C. § 2255 on grounds that his two appointed counsel provided ineffective assistance during proceedings on his motion to suppress and negotiation of his plea agreement. He also argues that his sentence is unconstitutional because this Court declined to impose a sentence of supervised release. For the following reasons, the Court denies the motion.

## STANDARD OF REVIEW

"A Section 2255 petition enables a defendant to petition the court that imposed the sentence, collaterally attacking a sentence imposed after a conviction. Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence upon the ground that the sentence was imposed in

---

[1] Even though the motion is styled as a *pro se* motion, it is well researched and written, and the Court suspects it may be the product of an accomplished jailhouse lawyer. The Court will nonetheless construe the motion liberally in Mr. Castro Valdez's favor.

- 1 -

violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. Relief is generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Leavy*, No. 19-160, 2022 WL 2829948, at \*1 (W.D. Pa. July 20, 2022) (Schwab, J.) (cleaned up). However, a motion to vacate "is not a substitute for an appeal." *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074 (3d Cir. 1985) (citation omitted).

In reviewing a motion to vacate under Section 2255, "[t]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (cleaned up). Where, as here, the petitioner files his motion *pro se*, the Court construes the pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation[.]" *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). A district court must "hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief[,]" but "may summarily dismiss a § 2255 motion where the motion, files, and

records show conclusively that the movant is not entitled to relief." *United States v. Mason*, No. 07-5101, 2008 WL 938784, at *1 (E.D. Pa. Apr. 4, 2008) (cleaned up).

## **DISCUSSION & ANALYSIS[2]**

Mr. Castro Valdez makes two main arguments supporting his Section 2255 motion: (1) his two appointed counsel, Sally Frick and Thomas Livingston, provided ineffective assistance because Attorney Frick filed an insufficient motion to suppress the government's evidence, both Attorney Frick and Attorney Livingston failed to argue that Mr. Castro Valdez was the victim of racial profiling, and Attorney Livingston failed to negotiate a conditional plea agreement, and (2) this Court failed to impose a sentence of supervised release, which he argues was necessary to earn and apply any First Step Act time credits. Both claims lack merit, however, so the Court denies the motion.

### **I. Ineffective Assistance.**

A petitioner bringing a claim for ineffective assistance of counsel must satisfy the familiar two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668

---

[2] This Court recounted the facts of this case in detail in its opinion denying the motions to suppress of Mr. Castro Valdez and his co-Defendant, Jose Roberto Sanchez Romero, and incorporates by reference those factual findings here. *United States v. Romero*, 559 F. Supp. 3d 437 (W.D. Pa. 2021) (Ranjan, J.). As relevant here, on October 28, 2019, on the Pennsylvania Turnpike in Westmoreland County, Pennsylvania State Police Trooper Del Sordo observed a rental vehicle driven by Mr. Castro Valdez change lanes and drive too closely to the vehicle directly in front of it, in violation of 75 Pa. C.S. § 3310(a). *Id.* at 441-43. Trooper Del Sordo stopped the vehicle, obtained consent to search the vehicle from Mr. Sanchez Romero, who rented the vehicle, and then found large quantities of heroin and fentanyl in the trunk. *Id.* at 442-43. Defendants moved to suppress this evidence, and the Court denied the motions, concluding that (1) Trooper Del Sordo, had a lawful basis to stop the vehicle, (2) even if the stop were merely pretextual, the stop was still valid under Supreme Court and Third Circuit precedent, (3) the stop was not unreasonably prolonged because Trooper Del Sordo had reasonable, articulable suspicion of criminal activity at each step of the traffic stop, and (4) Mr. Sanchez Romero voluntarily consented to a search of the vehicle.

(1984). First, "the petitioner must show that 'counsel's representation fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *United States v. Kastory*, No. 22-142, 2023 WL 5901646, at *5 (W.D. Pa. Sept. 11, 2023) (Ranjan, J.) (quoting *Strickland*, 466 U.S. at 688). When evaluating this first prong, the Court must be "highly deferential" to counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (cleaned up). "To overcome the *Strickland* presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

Then, the petitioner must show prejudice such "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 502 (cleaned up). Since a petitioner must establish both deficient performance and prejudice, failure to establish one prong obviates the need for the Court to review the other. *United States v. Travillion*, 759 F.3d 281, 294 (3d Cir. 2014).

    **A.**    **Insufficiency of Mr. Castro Valdez's motion to suppress.**

Mr. Castro Valdez first argues that his then-counsel, Sally Frick, filed a motion to suppress that "[i]n every way . . . fell well short of the prevailing professional norms[.]" ECF 183, p. 13. This motion was brief, only a few pages long, made no citations to case law, statutes, or rules, and contained only "conclusory statements of fact and baseless assertions" without "suggest[ing] in even the broadest terms why

the stop, search, or seizure in this matter might have been illegal or why the fruits of that search should be excluded." *Id.* at 12-13.

Assuming Ms. Frick's motion to suppress was generally terrible and fell many levels below an objective standard of reasonableness (both safe assumptions), the Court concludes that Mr. Castro Valdez did not suffer any resulting prejudice. That's because the Court received briefing from Mr. Castro Valdez's co-defendant on the same issues, and that briefing was well done and fully explored the appropriate legal issues. ECF 58. Nor is there any prejudice because the Court further held an evidentiary hearing on both Mr. Castro Valdez's motion and his co-defendant's motion and made detailed findings of fact and conclusions of law on those motions before denying them. ECF 107; ECF 108; *Romero*, 559 F. Supp. 3d at 441-43. Finally, Mr. Castro Valdez doesn't make any arguments now that Ms. Frick should have raised and that would have altered the Court's prior analysis. Thus, there is no reasonable probability that the proceeding would have been different had Mr. Castro Valdez's counsel filed a better articulated motion.

**B.    Failure to raise equal-protection challenge.**

Next, Mr. Castro Valdez argues that counsel's failure to raise an equal-protection argument was an unsound strategy that was "objectively unreasonable." ECF 183, p. 14. Specifically, Mr. Castro Valdez argues that there was ample support to argue for dismissing the indictment because Trooper Del Sordo stopped and searched his vehicle because he was Hispanic. As such, he contends that both of his lawyers' failure to make this argument constitutes ineffective assistance of counsel. After careful review, the Court finds that Mr. Castro Valdez cannot meet his burden to establish that counsel's performance here was deficient.

The Due Process Clause of the Fifth Amendment prohibits selective enforcement of the law based on considerations such as race. *United States v.*

*Washington*, No. 13-171, 2021 WL 120958, at *22 (E.D. Pa. Jan. 13, 2021). To succeed, a defendant "must provide clear evidence of discriminatory effect and discriminatory intent[.]" *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017) (cleaned up). This is a difficult burden to meet. *United States v. Patterson*, No. 06-22, 2009 WL 728575, at *2 (W.D.N.C. Mar. 17, 2009).

In the context of a traffic stop, to establish discriminatory effect, a criminal defendant must typically point to statistics that reflect selective enforcement—*i.e.*, discriminatory practice of traffic stops. *See United States v. Duque-Nava*, 315 F. Supp. 2d 1144, 1155-56 (D. Kan. 2004) ("The Supreme Court has long noted the importance of statistical analysis in cases in which the existence of discrimination is a disputed issue." (cleaned up)). Mr. Castro Valdez does so in his motion now, but those statistics must be reliable and relevant. *Id.* at 1157. And the Court finds that the statistics cited by Mr. Castro Valdez are not.

Mr. Castro Valdez points to two bodies of statistical evidence to support his equal protection argument. In the first dataset, Mr. Castro Valdez relies on the National Policing Institute's May 23, 2023, Annual Report on Pennsylvania State Police Traffic Stops ("Report")[3] as evidence that Pennsylvania State Troopers with Trooper Del Sordo's training disproportionately pull over and search Hispanic motorists compared to white motorists. ECF 183, pp. 16-20. In the second dataset, Mr. Castro Valdez collected records showing that, between April 18, 2023 and August 30, 2023, Trooper Del Sordo engaged in 10 traffic stops, seven of which involved Hispanic drivers. ECF 183, pp. 17, 20-23; ECF 183-5.

These statistics are not relevant because they do not cover the applicable time. The traffic stop occurred in 2019, and the deadline for counsel to file pretrial motions

---

[3] ROBIN S. ENGEL ET AL., NAT'L POLICING INST., PENNSYLVANIA STATE POLICE TRAFFIC STOP STUDY: 2022 ANNUAL REPORT JANUARY 1 – DECEMBER 31, 2022 (2023), https://www.psp.pa.gov/data/Documents/CDR/CDR_2022.pdf

was August 10, 2022.  ECF 135.  But NPI only published the report in May 2023 with data collected during 2022, and NPI didn't collect any traffic stop data from 2011 to 2021[4]; and the data about Trooper Del Sordo's stops likewise concerns events that took place well after Mr. Castro Valdez was sentenced.  The consequence of this stale data is two-fold.

First, the data does not establish "clear evidence" of discriminatory effect, which is fatal to any selective-enforcement claim.

Second, more relevant here, how could counsel be ineffective by failing to raise data that did not exist when pretrial motions were due?  As noted above, NPI published the report well after pretrial motions were due and filed.  "[A] fair assessment of attorney performance requires us to evaluate the conduct from counsel's perspective at the time" of the performance, not after.  *Whitfield*, 2022 WL 2355433, at *3 (cleaned up).  Since Mr. Castro Valdez has offered evidence that was unavailable to counsel at the time, the Court cannot say that counsel's failure to raise the equal protection argument at any point during these proceedings was deficient. *Id.*[5]

For these reasons, failure to raise an equal-protection claim cannot serve as the basis to question counsel's effectiveness.

### C. Failure to negotiate a conditional plea agreement.

Also as part of his first claim for relief, Mr. Castro Valdez argues that his second lawyer, Attorney Livingston, was ineffective for failing to negotiate a conditional plea agreement, which Mr. Castro Valdez says would have permitted him

---

[4] Report, p. vi.

[5] For this reason, the Court declines Mr. Castro Valdez's request for an *in-camera* review of all data related to Trooper Del Sordo's traffic stops in 2023—that data post-dates Mr. Castro Valdez's case, so it simply cannot support his claim.  ECF 189, p. 7.

to raise the equal-protection issue on appeal while preserving the guilty plea. ECF 183, pp. 26-27. This is just a variation on the Mr. Castro Valdez's equal-protection argument.

Because Mr. Castro Valdez has not presented evidence that he had a viable equal-protection argument, his counsel's failure to negotiate a conditional plea to preserve that issue is neither deficient nor prejudicial. "Just as counsel cannot be deemed ineffective for failing to raise a meritless claim, it stands to reason counsel does not transgress the Sixth Amendment by failing to negotiate a conditional plea agreement that preserves the same fruitless issues for appellate review." *United States v. Rice*, No. 14-119, 2023 WL 4138256, at *12 (M.D. Pa. June 22, 2023) (cleaned up), *certificate of appealability denied*, No. 23-2221, 2023 WL 9074745 (3d Cir. Oct. 20, 2023).

Mr. Castro Valdez has failed to meet his burden under *Strickland*. Thus, the Court dismisses his first ground for relief.

## II. Mr. Castro Valdez's sentence did not violate the law.

In his second ground for relief, Mr. Castro Valdez argues that the Court improperly failed to impose a sentence of supervised release. ECF 183, pp. 27-28. He says that such a sentence is necessary for him to accrue First Step Act time credits. *Id.* at 28. As the government correctly explains, this argument is barred by Mr. Castro Valdez's collateral attack waiver in his plea agreement and is also procedurally defaulted. ECF 186, pp. 18-20. But the claim also lacks merit.

At sentencing, the Court found that Mr. Castro Valdez was safety-valve eligible such that the mandatory minimum terms of imprisonment and supervised release did not apply. ECF 185, 7:6-18, 9:19-24. In other words, there was no legal obligation for the Court to impose supervised release, and there was good reason for the Court to not impose it: Mr. Castro Valdez faces deportation upon release from

imprisonment. *See* U.S.S.G. § 5D1.1(c) ("The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."). Thus, contrary to Mr. Castro Valdez's claim, his sentence was not "illegal." ECF 189, p. 11.[6]

### III. No certificate of appealability will issue.

The Court further finds that no certificate of appealability will issue because Mr. Castro Valdez has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2) and reasonable jurists would not disagree with denial of his Section 2255 motion.

### CONCLUSION

**AND NOW**, this **16th day of May, 2024**, upon consideration of Defendant Jose Ramon Castro Valdez's Section 2255 motion to vacate his sentence (ECF 177), it is hereby **ORDERED** that, for the foregoing reasons, Defendant's motion is **DENIED**.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

---

[6] Mr. Castro Valdez's main complaint is that the Court's failure to impose supervised release renders him ineligible for certain credits from the BOP. But that is outside the Court's hands; there is nothing that requires a court at sentencing to consider potential future credits that the BOP might or might not be able to allocate. Often, criminal defendants argue that it is erroneous for a district judge to consider the application of future credits at sentencing. *See, e.g.*, *United States v. Brown*, No. 22-3195, 2023 WL 7122587, at *1 (3d Cir. Oct. 30, 2023). In any event, it does not appear that Mr. Castro Valdez is eligible to earn First Step Act time credits because he was convicted of a crime related to the distribution and possession with intent to distribute of fentanyl. 18 U.S.C. § 3632(d)(4)(D)(lxvi).